Filed 8/30/24

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

| | |
|---|---|
| VIRGINIA SIMERS, as Executor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LOS ANGELES TIMES COMMUNICATIONS LLC <br><br> Defendant and Appellant. | B323715 <br><br> Los Angeles County <br> Super. Ct. No. BC524471 |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Armen Tamzarian, Judge.  Affirmed.

Shegerian & Associates, Carney Shegerian and Jill McDonell for Plaintiff and Appellant.

Ballard Rosenberg Golper & Savitt, Linda Miller Savitt, John J. Manier; Daniels, Fine, Israel, Schonbuch & Lebovits and Michael Schonbuch for Defendant and Appellant.

———————————————

## SUMMARY

The defendant and the plaintiff both appeal from a postjudgment order awarding attorney fees and costs to the prevailing plaintiff in this employment discrimination case after nine years of litigation and three trials.

The primary issue is the defendant's contention that the plaintiff should not have recovered any fees for counsel's work on the second trial, because the third trial was necessitated by counsel's misconduct in closing argument at the second trial. Defendant also challenges fees awarded for certain work on plaintiff's unsuccessful appeal after the first trial.

Plaintiff contends he should recover his attorney fees for this appeal, despite the trial court's order that he cannot recover any fees or costs incurred after he rejected the defendant's offer of compromise on December 7, 2021, shortly before the third trial, and failed to obtain a more favorable judgment.

We find no abuse of discretion in any part of the trial court's order.

## FACTS

After the briefs were filed in these appeals, plaintiff T.J. Simers passed away. We granted the motion of Virginia Simers, the sole beneficiary and executor of Mr. Simers's will, to substitute herself as plaintiff in this matter. For sake of readability, we continue to refer to Mr. Simers as plaintiff.

### 1. Background Facts

The underlying facts and procedural background are concisely described in the trial court's ruling, some of which we quote without attribution.

Plaintiff T.J. Simers was a well-known and sometimes controversial columnist for Los Angeles Times Communications LLC (defendant or The Times). In August 2013, plaintiff was

2

demoted to a senior reporter. Shortly thereafter, he obtained a position as a columnist with a rival newspaper and filed this action against The Times for constructive termination and age and disability discrimination in violation of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).

There have been three jury trials in this case.

In the first trial, the jury found defendant was liable for both discrimination and constructive termination. The jury awarded plaintiff $2,137,391 in economic damages for harm caused by his constructive termination, and $5 million in noneconomic damages, without identifying which noneconomic damages were caused by the constructive termination and which were caused by the discrimination. The trial court granted defendant's motion for judgment notwithstanding the verdict (JNOV) on plaintiff's constructive termination claim and granted a new trial on noneconomic damages. Both parties appealed. We affirmed the trial court's orders and remanded the case for a new trial on damages for plaintiff's demotion. (*Simers v. Los Angeles Times Communications LLC* (2018) 18 Cal.App.5th 1248 (*Simers*).)

In the second trial, the jury awarded plaintiff $15.4 million in noneconomic damages. The trial court, however, granted defendant's motion for a new trial on two grounds. The first was that one of plaintiff's counsel engaged in misconduct during her rebuttal closing argument, improperly suggesting the jury should award damages on the basis of defendant's wealth and ability to pay. The court found the misconduct, "which had no basis whatsoever in the evidence and violated the Court's instruction that the jury should not consider the Defendant's wealth, was so egregious, harmful and prejudicial that no instruction and admonition would have prevented the harm done and that nothing short of a new trial could or can alleviate that harm."

The court also found the damages awarded were excessive "and cannot be justified by the evidence," granting a new trial "on the ground of excessive damages in addition to the ground of misconduct of counsel."

In the third trial, again the only issue was the amount of noneconomic damages plaintiff could recover for his demotion. Plaintiff's counsel asked the jury to return a verdict between $30 and $50 million, and defense counsel argued that an award between $500,000 and $1 million was reasonable. The jury returned a verdict of $1.25 million.

The jury's verdict was the exact amount of an offer defendant made on December 7, 2021, shortly before the third trial began, to settle under Code of Civil Procedure section 998 (section 998).

On February 4, 2022, the trial court entered judgment on the jury verdict.

In June 2022, defendant paid plaintiff $1,292,123.29 in partial satisfaction of the judgment.

## 2. The Attorney Fee Motion and Defendant's Motion to Tax Costs

In May 2022, plaintiff filed a motion for attorney fees, requesting fees of more than $15.5 million. This consisted of $7,860,475, based on hours spent multiplied by hourly rates (the "lodestar" amount), with a 2.0 multiplier based on contingent risk and other factors. The time spent included time on all three trials and on the appeals after the first trial.

Defendant opposed the attorney fee motion. Among other contentions, defendant argued that section 998 precluded any fee recovery after the December 7, 2021 section 998 offer; that plaintiff could not recover fees for work on the second trial because that would reward plaintiff for his counsel's egregious misconduct; and that plaintiff could not recover fees for the

4

appeals after the first trial because he did not prevail on his appeal and this court's disposition stated that the parties would bear their own costs.

Plaintiff claimed costs of $577,890.29. Defendant filed a motion to tax costs, namely, all costs incurred after defendant's section 998 offer, all costs incurred in the second trial, and various specific items. Defendant contended plaintiff was entitled to no more than $36,999.76 in costs.

Plaintiff's opposition reduced his claimed costs to $457,256.70. When the trial court requested a declaration establishing costs incurred before defendant's section 998 offer, plaintiff claimed costs of $396,534.72.

### 3. The Trial Court's Ruling

In a thorough 25-page ruling, the trial court awarded plaintiff $3,264,906 in attorney fees. The court granted defendant's motion to tax costs in part, allowing plaintiff to recover $210,882.55 in costs.

The court first concluded plaintiff could not recover attorney fees or other costs incurred after defendant's December 7, 2021 section 998 offer.

The court then found the amount of fees claimed by the plaintiff was not reasonable.

First, the court reduced the hourly rates claimed by all of plaintiff's lawyers. In doing so, the court discussed factors that applied to all the lawyers (as well as assessing each lawyer individually). The case "did not involve particularly novel or complex factual or legal questions." And, contrary to assertions by plaintiff's counsel, "[T]his was never a $30 to $50 million case. In the third trial, when the jury was correctly instructed regarding the limits of plaintiff's recoverable damages and plaintiff's counsel did not engage in misconduct, the jury returned

5

a verdict of $1.25 million.  In the court's view, this was a sensible and fair result that reflected the approximate value of the case."

Plaintiff's lawyers "did not accurately assess the damages plaintiff would recover and asked for an astronomical sum in the eyes of the jury and the court."  "Compared to plaintiff's settlement demands and the extraordinary amounts plaintiff's counsel requested at trial, plaintiff's lawyers were not very successful."  "Plaintiff's counsel thus collectively did not handle this case in a masterful way or achieve an outstanding result, or even a result that could not have been achieved by accepting defendant's reasonable settlement offer without a third trial."

Second, the court rejected defendant's contention plaintiff could not recover *any* fees for the second trial or for plaintiff's appeal after the first trial.  The court cited authority to the effect that the loss of one battle on the road to ultimate victory does not deprive the plaintiffs of their entitlement to fees and costs for that setback, and observed that defendant cited no authority supporting its position.

The court elaborated:  "At oral argument, defendant conceded that whether plaintiff can recover fees in the second trial or on appeal is a matter that falls within the court's discretion.  In its discretion, the court shall not deny plaintiff recovery of all fees related to the second trial and appeal.  That result would be too harsh.  It would also undermine the policy underlying awarding attorney fees to successful FEHA plaintiffs – providing access to counsel to victims of invidious discrimination and other civil rights violations.  But the court is also mindful of a countervailing policy.  There is 'civic value' in discouraging the overlitigation of civil rights cases.  [Citation.]  In determining whether plaintiff's fees as a whole are reasonable, the court has considered the events that led to the necessity of a third trial."

6

Third, the court discussed the reasonable number of hours to be used in calculating the lodestar. The court observed that the number of plaintiff's attorneys (11) led to inefficiency and excessive billing, and counsel "exercised no billing judgment to reduce any charges." The court identified several examples and concluded: "[T]he court finds that, conservatively, the reasonable hours were 20 percent less than plaintiff claims," so the court reduced the hours "across-the-board by 20 percent" (applied only to hours billed before the December 7, 2021 offer to compromise).

Finally, the court declined to apply a multiplier.

As with attorney fees, the trial court ruled plaintiff could recover only preoffer costs, and could recover costs incurred in the second trial. The court taxed various specific cost items.

Defendant filed a timely appeal from the trial court's July 29, 2022 order, and plaintiff filed a cross-appeal.

## DISCUSSION

### 1. Defendant's Appeal

#### a. The legal background

We begin by acknowledging the absence of any precedents presenting what defendant refers to as "this scenario," that is, a case involving an attorney fee award that includes work on a "discrete trial," where a new trial is required because of misconduct by plaintiff's counsel in closing argument (and excessive damages). But neither the existing precedents nor the record in this case supports the result defendant seeks, which would in effect eliminate the court's discretion in "this scenario."

General principles with some bearing on this case are these.

California law is consistent with federal law on several points in determining attorney fees for a prevailing plaintiff in a civil rights case, and the cases regularly cite *Hensley v. Eckerhart*

7

(1983) 461 U.S. 424. One of these principles is that "[i]f a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.'" (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 989 (*Chavez*), quoting *Hensley,* at p. 440.)

"Compensation is ordinarily warranted," even for unsuccessful litigation forays, "unless the unsuccessful forays address discrete unrelated claims, are pursued in bad faith, or are pursued incompetently, i.e., are such that a reasonably competent lawyer would not have pursued them. Time not reasonably spent by counsel for the prevailing party need not be compensated and bad faith can constitute a basis for a total disentitlement." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1303 (*Drew*).)

" '[T]here is no certain method of determining when claims are "related" or "unrelated." ' [Citation.] Claims may be unrelated if they are 'based on different facts and legal theories.' [Citation.] Conversely, related claims 'will involve a common core of facts or will be based on related legal theories.' " (*Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 361.)

Some federal district courts have reduced attorney fees where there was a "persistent pattern of misconduct," but have refused to completely deny fees because there was no "duplicitous or dishonest" conduct and counsel's behavior "falls short of intentionally trying to pervert justice." (*Meyler v. Commissioner of Social Security* (D.N.J. July 7, 2008, Civ. No. 04-4669 (GEB)), 2008 U.S.Dist. Lexis 51684, pp. *6-*7 (*Meyler*); see also *Jadwin v. County of Kern* (E.D.Cal. 2011) 767 F.Supp.2d 1069, 1099 (*Jadwin*) [counsel did not attempt to deceive the court and "his

8

overall conduct as a vigorous advocate does not raise [*sic*] to the level of intentional bad faith misconduct"].)

### b. Contentions and conclusions

Defendant contends the trial court abused its discretion in awarding attorney fees for the appeal and the second trial. Defendant calculates that "at least *$614,950* of the $3,264,906 fee award pertained solely to work billed on [plaintiff's] unsuccessful appeal and the nullified second trial." This consists, according to defendant's charts, of $112,032 for plaintiff's opening brief on the appeal, and $502,918 for work connected with the second trial.

### i. The second trial

Defendant offers two bases for finding an abuse of discretion. Defendant contends the trial court "didn't adequately consider" that work done on plaintiff's "nullified second trial" was "entirely unrelated to his success on liability and the final damage award." And, as an "additional basis," defendant says the court abused its discretion because it did not "independently consider[]" the misconduct of plaintiff's counsel "in determining whether [plaintiff] is entitled to *any* fees for a trial that was nullified by this misconduct." (Italics added.)

Neither of these contentions has merit. The first applies the term "entirely unrelated" in a manner that has not been used in any of the precedents defendant cites. And the claim that the trial court did not "independently consider[]" counsel's misconduct when it decided it would be "too harsh" to deprive counsel of all fees for the second trial is simply not borne out by the record.

We begin with two observations. One is that, at oral argument in the trial court, defense counsel stated their position that the court "has discretion to disallow both costs and fees for the [second] trial and for the appeal," repeating that "it is

9

discretionary." The second is that the trial court expressly stated that, "[i]n determining whether plaintiff's fees *as a whole* are reasonable, *the court has considered the events that led to the necessity of a third trial."* (Italics added.) Similarly, the court observed that: "Had plaintiff's counsel sought to apply the correct applicable law in the first trial and refrained from misconduct in the second, only one trial would have been necessary." In short, the court had well in mind the misconduct in closing argument that made a third trial necessary.

Defendant insists the trial court "should be required to address not only whether the plaintiff ultimately prevailed on the claims litigated at the second trial, but also whether attorney time on that trial was *unrelated to the prevailing plaintiff's eventual success*" in the third trial. (Defendant's italics.) According to defendant, work on the second trial was "unrelated" to the third trial, even though the trials involved identical issues. Defendant's position appears to be that a discrete trial on identical issues is the equivalent of a discrete claim on an unrelated issue, because the attorney time spent on the aborted trial can be separated from other litigation time, just as work on an entirely unrelated claim can be separated. Defendant continues by saying the discrete nature of the second trial and its "lack of relation" to plaintiff's success "is reason enough to deny him fees from that trial," and the trial court "legally erred" because it "didn't adequately consider" denying attorney fees entirely for the second trial on account of counsel's misconduct.

We are not persuaded by any of these arguments. Defendant repeatedly asserts the trial court did not "adequately consider" or "independently consider[]" the misconduct of plaintiff's counsel and the "lack of relationship" between the second trial and plaintiff's success. We cannot agree with these

10

assertions, as we see no evidence in the trial court's order of any inadequacy in its consideration of these points. Defendant's position in effect is that the trial court has *no* discretion where counsel's misconduct caused the need for a new trial.

Defendant loses sight of the basic principle that a FEHA plaintiff is entitled to compensation for all time reasonably spent on the litigation in which he prevailed. Defendant would have the trial court rule that *none* of the time spent on the second trial was reasonably spent because of misconduct that occurred at the very end of the trial. The trial court thought otherwise, finding that result would be too harsh, and would undermine the policy underlying attorney fee awards to successful FEHA plaintiffs.

As we observed earlier, the trial court was well aware of what happened at the second trial, and explicitly stated that, "[i]n determining *whether plaintiff's fees as a whole are reasonable*, the court has considered the events that led to the necessity of a third trial." (Italics added.) This is consonant with the principle that "the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.' " (*Chavez, supra,* 47 Cal.4th at p. 989.) It appears to us that is exactly what the trial court did.

In sum, there is no precedent for restricting the trial court's discretion in cases where attorney misconduct is involved. And there is no precedent for eliminating attorney fees entirely for a discrete trial on identical issues by claiming it is "unrelated" to eventual success in a new trial. The principle to be applied is best stated in *Drew*, where the court observed that compensation "is ordinarily warranted" even for unsuccessful litigation forays. (*Drew, supra,* 207 Cal.App.3d at p. 1303.)

It is certainly fair to describe the second trial as an "unsuccessful foray[]." (*Drew, supra,* 207 Cal.App.3d at p. 1303.) But attorney fees should be denied in such cases only where "the

unsuccessful forays address discrete unrelated claims, are pursued in bad faith, or are pursued incompetently, i.e., are such that a reasonably competent lawyer would not have pursued them." (*Ibid.*) None of those factors is applicable here. Defendant insists that counsel's misconduct "should be deemed close enough" to bad faith and was something a reasonably competent lawyer would not have done. But there was no finding of bad faith, and defendant misconstrues the incompetence factor.

We cannot say the entire second trial was "pursued incompetently . . . such that a reasonably competent lawyer would not have pursued [it]." (*Drew, supra,* 207 Cal.App.3d at p. 1303.) One of plaintiff's 11 lawyers, Courtney Rowley, acted egregiously at the end of the trial; that does not mean that the entire nine-day trial was "pursued incompetently" or that *all* of counsel's time was not "reasonably spent." (*Ibid.*) Indeed, when the trial court reduced Ms. Rowley's rate from $1,300 to $700 per hour, the trial court recognized in its discussion that Ms. Rowley "did not exercise sound judgment during the second trial," described her improper rebuttal argument and the finding that it was prejudicial, and ultimately concluded that her training, experience "and other relevant factors" justified the reduction in her rate.

Nor was the attorney misconduct here in the same categories as those mentioned in the district court cases defendant cites as justifying the complete denial of attorney fees for the second trial. There was no "persistent pattern of misconduct"; no "duplicitous or dishonest" conduct; no "intentionally trying to pervert justice" (*Meyler, supra,* 2008 U.S.Dist. Lexis 51684, p. *6), and no "attempt[] to deceive the Court" or "intentional bad faith misconduct" (*Jadwin, supra,* 767 F.Supp.2d at p. 1099).

12

Accordingly, we cannot find any failure to "adequately" or "independently" consider the factors defendant raises. The court clearly stated that it considered the misconduct that necessitated a third trial in making its award of fees that "as a whole are reasonable." We find no basis to conclude the trial court abused its discretion.

### ii. The unsuccessful appeal

Defendant makes a similar argument that the trial court "didn't adequately consider" that work done on plaintiff's "failed appeal" was "entirely unrelated" to his ultimate success in the case.

To recap, after the first trial, plaintiff appealed from the trial court's grant of JNOV on his constructive termination claim, and from the trial court's order granting a new trial on damages. We found no error in the trial court's rulings. Defendant also appealed, contending the trial court should have granted its JNOV motion on *all* of plaintiff's claims, or alternatively should have granted a new trial on liability for plaintiff's discrimination claims. We found no error in those rulings either. In our disposition affirming the orders, we stated the parties "shall bear their own costs on appeal." (*Simers, supra,* 18 Cal.App.5th at p. 1285.)

The trial court here rejected defendant's contention plaintiff could not recover fees incurred in that appeal because he did not prevail. The court quoted *Stratton v. Beck* (2018) 30 Cal.App.5th 901, 911 ("an award of costs in the Court of Appeal generally has no bearing on a party's ability to seek appellate attorney fees in the trial court"). The trial court observed that defendant cited no authority for its position, and conceded at oral argument that recovery of fees for the appeal was a matter within the court's discretion.

13

Now, defendant argues the court abused its discretion, for one of the same reasons we have just rejected with respect to the second trial: that those fees were "entirely unrelated" to plaintiff's ultimate success. Defendant concedes that "*some* of counsel's time pursuing [plaintiff's] unsuccessful appeal . . . might be deemed intertwined with time responding to [defendant's] unsuccessful cross-appeal," but not time spent on plaintiff's opening brief, which only addressed plaintiff's own appeal.

Again, defendant has not shown an abuse of discretion, for the same reasons we have already recited; we do not share defendant's notion of what is related and what is not. Plaintiff's appeal was an "unsuccessful foray[]," but it did not involve "discrete unrelated claims," nor was it pursued incompetently or in bad faith. (*Drew, supra,* 207 Cal.App.3d at p. 1303.)

### iii. Costs for the second trial

As with attorney fees, a prevailing FEHA plaintiff should ordinarily receive his or her costs "unless special circumstances would render such an award unjust." (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115.) Defendant calculates that "at least $101,589 of the cost award pertained to the 2019 [second] trial alone," and the trial court "did not adequately consider all factors bearing on its exercise of discretion on costs." As with the attorney fees, defendant says the factors "not adequately consider[ed]" were the asserted "lack of relationship" with plaintiff's ultimate success and the misconduct of counsel. Defendant offers no argument to establish an abuse of discretion other than "the reasons discussed above," which we have already held do not establish an abuse of discretion.

14

## 2. Plaintiff's Appeal

As mentioned at the outset, the trial court ruled that plaintiff "may only recover attorney fees and costs incurred before December 7, 2021," the date of defendant's section 998 offer to compromise for $1.25 million, "plus reasonable attorneys' fees and costs as of December 7, 2021 in an amount to be determined by the Court."

The trial court's ruling was in accordance with section 998, which provides that a plaintiff who does not accept a defendant's offer and "fails to obtain a more favorable judgment . . . shall not recover his or her postoffer costs . . . ." (§ 998, subd. (c)(1).) Section 998 further provides that, "[i]n determining whether the plaintiff obtains a more favorable judgment, the court or arbitrator *shall exclude the postoffer costs*." (§ 998, subd. (c)(2)(A), italics added.)

Plaintiff's opening brief is two pages long. His only contention is that the trial court's ruling "be found not to preclude his future recovery of appellate fees here, in light of his prevailing party status." He asserts that "he obtained a recovery more favorable than [defendant's section 998] offer, when determining his entitlement to appellate fees." Plaintiff reasons that if he had accepted defendant's offer, he would have had to file a motion to obtain the attorney fees; he would have been entitled to fees for preparing that motion; and therefore those postoffer fees should be added to the jury verdict of $1.25 million, resulting in a recovery greater than defendant's section 998 offer.

This contention fails for multiple reasons.

First, plaintiff did not present this contention to the trial court, and thus has forfeited it. In his reply brief, plaintiff admits he did not assert this argument below. However, he asserts he did not request future appellate fees in his attorney fee motion, so the trial court's order "did not address" appellate attorney fees

15

and does not preclude their recovery. We consider the contention specious because the trial court necessarily addressed appellate attorney fees by stating in its order that plaintiff "may only recover attorney fees and costs incurred before December 7, 2021."

Second, even if the claim were not forfeited, it would not succeed. Plaintiff cites several cases for the proposition that "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133, italics omitted; see also *Hogar Dulce Hogar v. Community Development Com. of City of Escondido* (2007) 157 Cal.App.4th 1358, 1371, citing *Serrano v. Unruh* (1982) 32 Cal.3d 621, 639.) That is ordinarily so, but that principle does not help plaintiff here. The cases cited do not involve a section 998 offer, and have nothing to do with determining whether a plaintiff who rejects a section 998 offer obtained a more favorable judgment.

Third, and most importantly, section 998 expressly requires the court to exclude postoffer costs in determining whether the plaintiff has obtained a more favorable judgment than the offer. (§ 998, subd. (c)(2)(A).) That is exactly what the trial court did. The two section 998 cases plaintiff cites as purportedly supporting his argument do not. (See *Wilson v. Safeway Stores, Inc.* (1997) 52 Cal.App.4th 267; *Stallman v. Bell* (1991) 235 Cal.App.3d 740.) Neither case involved the current statutory language (and *Stallman* involved a defendant's rejection of the plaintiffs' settlement offer, which is governed by an entirely different statutory provision).

Plaintiff completely ignores the unambiguous statutory language, insisting defendant's section 998 offer excluded fees he would have recovered had he accepted the offer. But defendant's

16

offer of $1.25 million plus preoffer fees and costs was no different from what the statute itself requires in determining whether plaintiff has obtained a more favorable judgment:  postoffer costs are excluded.  Plaintiff's opening brief does not acknowledge the dispositive statutory language at all, and his reply brief says it is "off point."  It is not.

## DISPOSITION

The order is affirmed.  The parties shall bear their own costs.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.



WILEY, J.